UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-CV-81263-ZLOCH

ESP SYSTEMS, LLC,

        Plaintiff,

vs.

NIGHTINGALE NURSES, LLC,

        Defendant.

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant NIGHTINGALE NURSES, LLC ("Nightingale") moves, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint (ECF No. 1) filed by Plaintiff ESP SYSTEMS, LLC ("ESP") and, in support, states:

**PRELIMINARY STATEMENT**

ESP and Nightingale are competitors in the medical staffing business. That much, alleged in the Complaint, is true. But under no stretch of the imagination has ESP stated viable claims against Nightingale premised on Nightingale's business practices. Although Count I of the Complaint attempts to state a false advertising claim under the Lanham Act, the advertising here is demonstrably true – Nightingale is in fact accredited by the Joint Commission.[1] The Complaint concedes as much. (ECF No. 1 at ¶ 30, n.3). As a "fix," ESP attempts to transform that truthful representation – that Nightingale has been certified by the Joint Commission – into a separate, implied representation by Nightingale that it has met and maintained all of the

---

[1] The Joint Commission is an independent, non-profit accrediting organization that, through its Health Care Staffing Services Certification Program, "provides an independent, comprehensive evaluation of a [medical] staffing firm's ability to provide qualified and competent temporary staffing services." (ECF No. 1-5 at 8.)

evaluation criteria required for certification.  But that square peg will not come close to fitting in that round hole.  Indeed, the attachments to ESP's Complaint confirm that the Joint Commission makes its own *independent* certification decisions.  Any reasonable consumer with access to the Joint Commission's webpage or, for that matter, Nightingale's, would conclude as much.

Moreover, ESP has made no attempt to plead damages beyond the legal conclusions soundly rejected by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Count II (Plaintiff's FDUTPA claim) is similarly devoid of any well-pled allegations concerning damages, and for that reason, likewise fails to state a claim for such relief.

Oddly, through Count III, ESP seeks an advisory declaration from this Court as to whether – *if* ESP decided to hire an employee of Nightingale – the non-compete agreement executed by any such employee would be upheld as valid under Florida law.  Not surprisingly, numerous cases stand for the common-sense proposition that this Court should only issue declarations regarding matters in actual controversy, and not with respect to hypothetical issues and concerns that may never come to pass.  Count III comes nowhere close to stating a real controversy and, for that reason, it must be dismissed as well.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This requires allegations of concrete facts from the beginning, *see Iqbal*, 556 U.S. at 662, and not merely "labels and conclusions, [or] a formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555.

ESP's Complaint contains three counts: (Count I) false advertising; (Count II) a claim under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA); and (Count III) declaratory judgment. Each of these counts should be dismissed for the reasons set forth below.

## 1. THE LANHAM ACT CLAIM FAILS TO STATE A CLAIM.

Count I attempts to allege a false advertising claim under the Lanham Act. *See* 15 U.S.C. § 1125(a). This claim should be dismissed for two reasons: first, ESP does not allege – beyond an unsubstantiated, formulaic legal conclusion – that any advertising actually published by Nightingale was false or misleading; and second, ESP fails sufficiently to allege injury proximately caused by Nightingale's advertising. Each is addressed in turn.

### A. None of Nightingale's Advertisements Were False or Misleading.

The first and most glaring defect to ESP's false advertising claim is that ESP fails properly to allege – beyond a pure legal conclusion – that Nightingale's actual advertising was false or misleading.

To state a claim for false advertising, a plaintiff must allege, among other things, (1) the advertisement of the opposing party was false or misleading; (2) the advertisement actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; and (3) the deception was material, meaning it was likely to influence purchasing decisions. *See Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260-61 (11th Cir. 2004); *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). As the *Hickson* court confirmed, the first element requires a plaintiff to show that the statement was either literally false as a factual matter or literally true or ambiguous, but which implicitly conveys a false impression, is misleading in context, or is likely to deceive consumers. *Hickson*

3

*Corp.*, 357 F.3d at 1261 (quoting *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)).

Here, ESP alleges one single advertisement made by Nightingale:

> 26. Nightingale holds itself out to the public as being Health Care Staffing Services certified by the Joint Commission, the relevant credentialing body.
>
> 27. Nightingale prominently displays the Joint Commission's gold seal of approval and related language on their website.

(ECF No. 1 ¶¶ 26-27.)

At no point does ESP allege that this advertisement – the only actual advertising alleged in the Complaint – is false. To the contrary, ESP implicitly – if not explicitly – concedes that it is true. (ECF No. 1 at ¶ 30, n.3).

Nor has ESP plausibly shown that this advertisement is misleading. Recognizing as it must that Nightingale is, in fact, certified by the Joint Commission, ESP seeks to sidestep this inconvenient truth by inventing wholesale an unsupported interpretation of the Joint Commission's certification. That is, ESP attempts to manufacture a false advertising claim by trying to equate Nightingale's display of the Joint Commission seal of approval with an unspoken, unwritten, ostensibly implicit representation that "Nightingale *holds itself out* to the public and its customers as being in full compliance with Joint Commission certification requirements and all applicable laws and regulations regarding health screenings." (ECF No. 1 ¶ 39) (emphasis provided). But no well-pled allegations support ESP's manufactured interpretation. Nowhere in the Complaint does ESP identify where, how, or to whom Nightingale made such a statement or representation. For that matter, no reasonable consumer could reach such a conclusion based on the display of the Joint Commission's seal of approval. To the contrary, certification by the Joint Commission means exactly what those words convey:

4

that **the Joint Commission** has evaluated Nightingale and determined that Nightingale complies with the established standards.  Indeed, the Joint Commission's own guidelines – which ESP attached to its Complaint – make clear that certification means that the Joint Commission (not Nightingale) has determined that Nightingale has met and maintained the evaluation criteria:

> The Joint Commission's Health Care Staffing Services (HCSS) Certification Program provides an **independent, comprehensive evaluation** of a staffing firm's ability to provide qualified and competent temporary staffing services.
>
> \*     \*     \*
>
> **The Joint Commission makes certification decisions** by applying decision rules to the scored standards. Decision rules determine a certification decision that appropriately represents a staffing firm's overall performance as measured by evidence of compliance with the applicable standards.

(ECF No. 1-5 at 8, 55) (emphasis provided). In other words, whether Nightingale is "in full compliance with Joint Commission certification requirements" is based not on a representation by Nightingale, but by an *independent* evaluation and determination by the Joint Commission. To the extent ESP now believes that the Joint Commission got it wrong, ESP can take up that belief with the Joint Commission, but a false advertising claim based on that belief cannot stand.

The undersigned has not located a single case in which a plaintiff sought to state – much less stated – a false advertising claim predicated on the proposition that the defendant improperly achieved an accreditation, a seal of approval, or some other rating and made note of that achievement to consumers. This should come as no surprise, because such allegations – if viable – would stretch the Lanham Act well beyond its statutory framework.  ESP's claim must be plausible on its face to withstand a motion to dismiss.  *See Twombly*, 550 U.S. at 570.  No reasonable consumer would reach the ultimate stretch of a conclusion proposed by ESP.

### B. ESP Fails Sufficiently To Allege Injury Proximately Caused By Nightingale's False Advertising.

ESP's failure to allege adequately proximate causation between Nightingale's supposed false advertising and ESP's supposed injury also renders Count I subject to dismissal.

A plaintiff seeking to invoke the Lanham Act must establish that it has a cause of action under the statute, which requires the plaintiff to show both that its interests fall within the "zone of interests" protected under the statute, and that the injuries asserted were proximately caused by the Lanham Act violation. *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1390 (2014).  In other words, "[t]o invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation **proximately caused by the defendant's misrepresentations**." *Id.* at 1395 (emphasis provided).  Although such allegations need not be plead "with great detail," a plaintiff "must at least allege some factual matter supporting a reasonable inference that [plaintiff] was injured by [defendant]." *Nature's Earth Prods., Inc. v. Planetwise Prods., Inc.*, No. 09-80770-CIV, 2010 WL 4384218, at *2 (S.D. Fla. Oct. 28, 2010).

Here, ESP alleges the following in support of its supposed injury:

> 79. Defendant's false and misleading representations have had a negative material effect on MedTemps' business *and the business of other competitors*.[2]

> 82. As a result of Defendant's conduct, MedTemps, *other competitors and the public at large* have been damaged in an amount to be determined at trial.

(ECF No. 1 ¶¶ 79, 82) (emphasis provided).  However, such bare allegations do not plausibly explain how Nightingale's supposedly false advertising damaged ESP, especially under the standard articulated in *Iqbal* and *Twombly*.  *See Glob. Tech LED, LLC v. Hilumz Int'l Corp*.,

---

[2] Curiously, ESP repeatedly alleges that other competitors or the public at large suffered supposed injury.  (ECF No. 1 ¶¶ 79-80, 82-83.)  ESP does not explain, though, how it has standing to redress injury supposedly suffered by others.

2:15-cv-553-FTM-29CM, 2016 WL 3059390, at *3 (M.D. Fla. May 31, 2016) (dismissing false advertising claim because the plaintiff failed sufficiently to allege commercial injury); *Nature's Earth Prods., Inc.*, 2010 WL 4384218, at *2 ("Here, Defendant's only allegation of an injury is the conclusory statement, '[Defendant] has been injured as a result of [Plaintiff's] deceptive, false, fraudulent, and misleading advertisements, marketing, and promotion, thereby resulting in damages to [Defendant].' **This is not enough** . . ..") (emphasis provided).

For all these reasons, Count I should be dismissed.

### 2. THE FDUTPA CLAIM FAILS TO STATE A CLAIM.

Count II of ESP's Complaint should likewise be dismissed. First, it is unclear whether ESP, as a competitor and not consumer, can bring a FDUTPA claim against Nightingale. But even if ESP has standing, it has failed to state a claim for a FDUTPA violation.

#### A. ESP Lacks Standing to Bring a FDUTPA Claim For Damages.

There is an open question of Florida law regarding the standing of competitors—as opposed to consumers—to sue for FDUTPA violations. While some courts have concluded that businesses may sue their competitors under FDUTPA,[3] others have held that a FDUTPA plaintiff must have acted as a consumer. *See, e.g.*, *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1350 (S.D. Fla. 2009) ("Plaintiff, as a non-consumer, is not entitled to monetary damages under FDUTPA."); *Cannova v. Breckenridge Pharm., Inc.*, No. 08-81145-CIV, 2009 WL 64337, at *3 (S.D. Fla. Jan. 9, 2009) ("While the statute has been amended to expand protection to corporate entities acting as consumers, Florida case law . . . still requires the plaintiff to act in some manner as a consumer in the conduct of trade or commerce."); *Goodbys Creek, LLC v.*

---

[3] *See, e.g.*, *Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1373 (S.D. Fla. 2010); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015).

*Arch Ins. Co.*, No. 307-cv-947-J-33HTS, 2008 WL 2950112, at *8 (M.D. Fla. July 31, 2008) ("Only consumers may bring private suit under FDUTPA."). *See also Fonte v. AT&T Wireless Servs., Inc.,* 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005) ("FDUTPA is a remedial statute designed to protect *consumers*.") (emphasis added).

In *Kertesz*, Judge Marra analyzed the legislative history surrounding FDUTPA's 2001 amendment, through which the legislature replaced the word "consumer" in section 501.211(2) with the word "person." He concluded that the "legislative history suggests to the Court that the change in the word 'consumer' to 'person' served to clarify that businesses, just like individuals, could obtain monetary damages in FDUTPA cases." *Kertesz*, 635 F. Supp. 2d at 1349. As Judge Marra noted, such an interpretation is "consistent with the overall purpose of FDUTPA which is to 'protect the *consuming* public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Id.* (quoting Fla. Stat. § 501.202(2)) (emphasis in original). Here, ESP acknowledges that it is a direct competitor of Nightingale's, rather than a consumer of Nightingale's services. (ECF No. 1 ¶ 25.) Thus, under the view espoused by Judge Marra and other federal judges, ESP lacks standing to pursue its FDUTPA claim against Nightingale.

### B. ESP Has Failed to State a Claim for a FDUTPA Violation.

Even if this Court takes the view that competitors have standing to sue for damages under FDUTPA, ESP has not come close to stating a claim for such relief. To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Sundance Apartments I, Inc. v. Gen. Elec. Capital Corp.*, 581 F. Supp. 2d 1215, 1220 (S.D. Fla. 2008). Furthermore, "[f]or the purpose of recovery under FDUTPA, 'actual damages' do not include consequential damages, precluding recovery of future

8

lost profits." *Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009). Instead, damages are limited to actual lost profits suffered as a result of the unfair practices. *See ADT LLC v. Alarm Prot. Tech. Florida, LLC*, No. 12-80898-CIV, 2013 WL 11276119, at *5 (S.D. Fla. Apr. 18, 2013).

Here, ESP alleges only that Nightingale's supposed practices lead to an unfair advantage against its competitors and that ESP "been damaged in an amount to be determined at trial." (ECF No. 1 ¶¶ 87-90). It provides no concrete information on *how* Nightingale's practices have caused actual damage to ESP. For example, ESP does not claim that it has lost specific placements to Nightingale nurses or that certain hospitals have chosen to do business with Nightingale over ESP. Indeed, ESP does not allege that it has lost a single dollar in profits as a result of Nightingale's actions. ESP's conclusory allegation that is has been damaged, without more, cannot sustain a FDUTPA claim.

### 3. A DECLARATORY JUDGMENT IS INAPPROPRIATE BECAUSE NO CASE OR CONTROVERSY EXISTS.

Count III of ESP's Complaint should be dismissed for one simple reason: there is no present case or controversy relating to restrictive covenants that bind unnamed Nightingale employees.

"Consistent with the 'cases' and 'controversies' requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347-48 (11th Cir. 1999) (affirming dismissal of claim for declaratory relief based on the absence of cognizable case or controversy or an "actual controversy" within the meaning of 28 U.S.C. § 2201). For a federal court to issue a declaratory judgment, the controversy must not be "conjectural, hypothetical, or contingent; it must be real and immediate,

9

and create a definite, rather than speculative threat of future injury." *Emory v. Peeler,* 756 F.2d 1547, 1552 (11th Cir. 1985) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments." *Id.*; *see also McKenna v. PSS World Med., Inc.*, No. CIV.A 09-0367, 2009 WL 2007116, at *3 (W.D. Pa. July 9, 2009) (dismissing declaratory judgment action involving a restrictive covenant because "the allegations of the complaint fail to demonstrate that the probability of the feared future event – [former employee] working for a competing business in contravention of the non-compete provision of the employment agreement – is real and substantial"). In *McKenna*, just like the case at bar, there was no allegation that an employee had been offered a position or had accepted a position. Under such circumstances, the *McKenna* court concluded that the parties' interests were not sufficiently adverse to constitute a dispute susceptible to declaratory relief. *Id*.

Here, ESP prays for a declaratory judgment invalidating **all** restrictive covenants applying to **all** Nightingale employees simply because ESP purportedly "desires to hire certain Nightingale employees." (ECF No. 1 ¶ 112.) ESP does not allege that any such hiring is imminent or impending; ESP does not even allege the identities of the employees it desires to hire, let alone the substance of their restrictive covenants. The absence of such rudimentary allegations demonstrates that this purported controversy is "conjectural, hypothetical, [and] contingent," rather than "real and immediate." *Emory*, 756 F.2d at 1552. As a result, Count III should be dismissed.

### 4. PLAINTIFF HAS SET FORTH NO BASIS FOR PUNITIVE DAMAGES

Finally, although ESP seeks punitive damages, it has set forth no basis for punitive damages and, as such, the request should be stricken. Punitive damages are not available under

the Lanham Act.  *See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001).  Nor is such relief available for a FDUTPA claim, absent an independent basis for such an award.  *See Rollins, Inc. v. Heller*, 454 So. 2d 580, 585-86 (Fla. 3d DCA 1984); *Rollins, Inc. v. Black*, No. 3:03-CV-772 J99MMH, 2004 WL 5572913, at *3 (M.D. Fla. Oct. 8, 2004) (citing *Heindel v. Southside Chrysler-Plymouth, Inc.*, 476 So. 2d 266, 271 (Fla. 1st DCA 1985)).  No such basis has been pled here.  Accordingly, the claim for punitive damages has no basis and should be stricken.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court dismiss ESP's Complaint and grant all other relief deemed appropriate.

Date: August 19, 2016.                           Respectfully submitted,

                                                  *s/ Matthew Triggs*
Matthew Triggs
Florida Bar No. 865745
Jessica Greenburg
Florida Bar No. 100827
PROSKAUER ROSE LLP
2255 Glades Road, Suite 421A
Boca Raton, FL 33431
Tel: (561) 241-7400
Fax: (561) 241-7145
Email: mtriggs@proskauer.com
Email: jgreenburg@proskauer.com
Secondary:
florida.litigation@proskauer.com
*Attorneys for Nightingale Nurses, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew Triggs*
Matthew Triggs

**SERVICE LIST**

CASE NO. 16-CV-81263-ZLOCH

**Jonathan E. Pollard, Esq.**
**Nathan M. Saunders, Esq.**
Pollard PLLC
401 E. Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 332-2380
jpollard@pollardllc.com
nsaunders@pollardllc.com
*Via Notice of Electronic Filing*